## IGLEHART VS. MOORE.

Nothing less than actual notice, or a waiver of it, would give such validity to a
judgment against a non-resident, as to make it obligatory upon him: and so a judg-
ment rendered in Tennessee, on motion without notice, against the principal in an
injunction bond, then a citizen of Arkansas, in favor of a security, who had paid the
debt after the dissolution of the injunction, is not of such validity as to constitute the
foundation of an action in this State; although, at the time of the execution of the
bond, the parties all resided in Tennessee, and the laws of that State provide for
such a judgment against the principal in such case.

*Appeal from the Circuit Court of Independence County.*

Hon. BEAUFORT H. NEELY, Circuit Judge.

FOWLER, for the appellant.   The law of the land in force, where
a contract is made, enters into every contract, and becomes a
component part thereof: and more especially a particular statute,
providing for a particular class of contracts to be made a part of a
record and of a judicial proceeding, enters into such contract.

Such a contract is not only a *virtual*, but an express waiver of
notice ; and, also, a full power and authority for rendering up the
judgment—as much so as a power of attorney to confess a judg-
ment.   It is an *agreement* on the *record*, in the proceeding in
which that bond is filed, that upon a certain contingency, the
court, on motion, shall render a particular judgment against the
obligors: and is as binding on the party as the confession of a judg-
ment on the record.

And *Moore* cannot legally extricate himself from the conclu-
sive effects of the judgment, on the ground that he resided in Ar-
kansas, *at the time it was rendered only*—when it is clearly shown,

that he had submitted himself to the jurisdiction of the court of *Tennessee, when he resided in that State.*

If the judgment here sued on was *conclusive* in Tennessee, it is equally so in Arkansas : and no defence can be set up to it here, unless such defence would have been sustainable, also, in Tennessee. See *Barkman vs. Hopkins,* 11 *Ark. R.* 162; *Hunt vs. Mayfield,* 2 *Stew.* (*Ala.*) *R.* 129; *Hampton vs. McConnell,* 4 *Con. R.* 243; *Westerwelt vs. Lewis,* 2 *McLean R.* 513; *McElmoyle vs. Cohen,* 13 *Pet. R.* 326.

Such bonds, given under statutes of Tennessee, draw even the *sureties* into the cause, in which the bond is given, and make them so far *parties* to it, as to give the court *jurisdiction* to render *judgment* against them. See *Black vs. Caruthers,* 6 *Hump. R.* 91; *Hubbard vs. Cole,* 9 *Yery. R.* 503.

In such cases, the act of Assembly, under which the bond is given, gives the *sureties* sufficient *notice* of the motion for judgment. And no notice, *in fact,* of such motion is necessary. *Kinchin's exr. vs. Brickell,* 2 *Hayw. Rep.* 50 ; *Turner vs. Greer,* 4 *Hayw. R.* 239; *Newman vs. Campbell, Mart. & Yerg. Rep.* 65.

By entering into the *bond* under the *statute,* the *surety submits* to the summary judgment. See *Love vs. McCool,* 1 *Tenn. R.* 337; *Reardon Ex parte,* 9 *Ark. Rep.*

CURRAN & GALLAGHER, for the appellee. The only question presented in this case, is, whether a *non-resident* of a State can be concluded by the adjudications of that State, founded upon *constructive notice.*

That such a judgment rendered in Tennessee would not be conclusive in this State, and that the facts stated in the replication to the third plea are no avoidance, it is sufficient to refer to *Barkman vs. Hopkins et al.,* 6 *Eng. R.* 157; *DeArcy vs. Kitchum et al.,* 11 *How.* (*S. C.*) *Rep.* 165, and the cases there cited by the courts and counsel.

FAIRCHILD, also, for appellee. A judgment in Tennessee will have the same effect here as there, only after it is established that the Tennessee court had proper jurisdiction by notice or waiver of notice, to give judgment. See, in addition to the two cases cited by other counsel, *Borden vs. Fitch*, 15 *J. R.* 125; *Shumway vs. Stillman*, 4 *Cow.* 295; *Rogers vs. Coleman*, *Hardin* 416; 5 *Wend.* 162; 13 *ib.* 415.

Special forms of statutory notice have no extra-territorial force. *Cow. & Hill's Notes* 912; *Buchanan vs. Rucker*, 9 *East* (new ed.) 104; *Earthman vs. Jones*, 2 *Yerg.* 484; *Kelly vs. Hooper*, 3 *Yerg.* 394.

Executing the injunction bond was not the beginning of the action in which the judgment sued on was obtained. The motion, on which judgment was rendered, was the beginning of the suit, and void here, because no notice was given.


Mr. Justice WALKER delivered the opinion of the Court.

The action was debt, upon the record of a judgment, rendered in Tennessee. The defence, relied upon, is, that the court, rendering the judgment, had not, by notice, or otherwise, acquired jurisdiction over the person of the defendant, who was, at the time the suit was instituted, and the judgment was rendered, a non-resident of the State of Tennessee.

To this plea, the plaintiff filed the following special replication:

*Precludi non*, because, he says, that he, the said Charles Moore, was, on the 7th day of April, 1840, and had been for a long time, continuously next before that day, and continued to be, for a long time continuously next thereafter, a citizen, and resident] of Perry County, and State of Tennessee, and being such resident citizen, and then and there so domiciliated, he, the said defendant, and one William K. Waddy, who was also then and there a resident citizen of, and domiciliated in the said county of Perry, and State of Tennessee, exhibited, and filed, their certain bill in chancery, commonly called an injunction bill, with and before

the chancellor of the Western Division of the said State of Tennessee, in the court of chancery, then, and afterwards holden at Huntingdon, in said State, said court, then and there, having jurisdiction thereof, in which bill, they, the said Charles and William K., were the complainants, against William and Cornelius Fellows, defendants thereto, praying, in said bill, amongst other things, a writ of injunction, enjoining and restraining the said W. & C. Fellows from enforcing and collecting a certain judgment at law, rendered previous to that time, in, and by the Circuit Court of said county of Perry, in favor of the said W. & C. Fellows, against the said Charles and William K., as partners for a debt of nine hundred and ninety-eight dollars. And that the said Charles and William K., then being so domiciliated, on the 7th of April, 1840, solicited the said Michael to become their security in, and to, an injunction bond, for the purpose of obtaining said writ of injunction against the said judgment at law, and on their earnest solicitation, especially of Charles Moore, the said Michael consented to become such security for them, and thereupon, then and there, the said Charles Moore, and William K. Waddy, principals, and the said Michael, security, executed their bond of that date, whereby they bound themselves unto the said William and Cornelius Fellows, in the sum of nineteen hundred and ninety-six dollars, for the payment whereof, they thereby, then and there, bound themselves, their heirs, &c., jointly and severally. The condition of which bond and obligation, was, that whereas the above bound Charles and William K., had that day filed their bill of complaint in the clerk's office of the chancery court at Huntingdon, for the Western Division, composed of the counties of Perry, &c., against the said William and Cornelius Fellows, and had prayed for, and obtained an injunction upon the matters set forth in said bill, then should the said Moore and Waddy prosecute their suit on said bill with effect; or, in case they fail therein, should pay to the said William and Cornelius Fellows, all such costs and damages as might accrue in consequence thereof, and to stand to, perform, and abide by, such order, judgment,

and decree, as might be made by said court, touching said injunction, then that obligation was to be void, else to remain in full force and virtue.   Which said obligation and bond, on the same day of the date thereof, was filed with the said bill, in the office of the clerk of said court of chancery, at Huntingdon aforesaid, in said State of Tennessee, and thereby became a record of said chancery court, and a part of the proceedings in said suit in chancery, where the same still remains on file as such record, and, therefore, cannot be now here in court shown, and thereupon in pursuance of an order, previously made by the said chancellor, the said judgment at law was enjoined and stayed in conformity with the statute in such cases made and provided.   And, afterwards, such proceedings were had in the said court of chancery, at Huntingdon, upon the said injunction bill, that, on the 2d day of August, 1842, in the said court of chancery at Huntingdon aforesaid, before the said chancellor, it was, by him, the said chancellor in the said court of chancery, ordered, adjudged, and decreed, that the said bill be dismissed, and the injunction theretofore granted dissolved; and it was, then and there, further considered, by the said court of chancery, that the said defendants, William and Cornelius, recover, of the said complainants, the said Charles and William K., and of the said Michael, their security in said injunction bond, the sum of twelve hundred and ninety-one dollars and sixty cents, the amount of the judgment enjoined, with interest up to that time; also, the costs in that behalf expended.   All of which will more fully, and at large appear, by the record thereof, still remaining in said court of chancery at Huntingdon aforesaid, in the said State of Tennessee, and which decree and judgment, so then and there rendered, was in  conformity with the statute and laws of the said State of Tennessee, in such cases made and provided.   Whereby, and by the execution of said injunction bond, as aforesaid, the said Charles and William K., so being, then and there, resident citizens of, and domiciliated in said county of Perry, in the State of Tennessee, by force of the statute of said State of Tennessee, in such cases made and provided, as princi-

pals in the said injunction bond, and the said Michael, their security, submitted themselves, voluntarily, to the jurisdiction of said court of chancery, at Huntingdon aforesaid, and then and there, virtually consented, and agreed, by the execution of said injunction bond, according to the form of the statute of said State of Tennesse, in such cases made and provided, and then in full force, and as such entering into the contract, so made by said injunction bond, and becoming, and constituting a part thereof, that upon such dissolution of said injunction, the judgment last aforesaid, should be so rendered against them, the said Charles and William K., and Michael, for the amount of the principal, interest and costs of said judgment at law, so enjoined as aforesaid, and that the said Charles and William K., by the execution of the said injunction bond, then and there as aforesaid, thereby, then and there further consented, and agreed, that, according to the form of the statutes of the said State of Tennessee, in such cases made and provided, and then and there in full force, and as such entering into and constituting part of the contract and obligation of the said injunction bond, upon the dissolution of such injunction, so granted, and upon such judgment so being rendered against them, and the said Michael as aforesaid, upon such injunction bond, and that upon the said Michael, as their security as aforesaid, paying the amount of said judgment last aforesaid, or any part thereof, that he, the sale Michael, as such security, might obtain and recover a judgment, by motion, against them, the said Charles and William K., as such principal obligors in said injunction bond, for the full amount of whatever might be so paid by the said Michael, as such security, with interest thereon, on such judgment so rendered upon the dissolution of the injunction against them, in said court of chancery, where said last mentioned judgment was rendered as aforesaid, and thereby, then and there, voluntarily, submitted themselves to the jurisdiction of said court of chancery, for that purpose, and fully waiving any, and all other notice of such motion, and fully authorizing the said court of chancery, upon the payment of such sum of money, by the said Michael, so

adjudged against them, as their security, or any part thereof, and upon the mere motion of the said Michael, without any other notice whatever, to render up a judgment against them, the said Charles and William K., in favor of the said Michael, for the amount of money so paid, by the said Michael, with interest thereon, or for which he might be bound by said joint judgment. And he, the said Michael, says, that, after the entering up of the said judgment against the said Charles and William K., and Michael, as aforesaid, that he, the said Michael, as such security, before the rendition of the said judgment in said declaration mentioned, to wit: on the first day of September, 1842, paid to the said William and Cornelius, on said last mentioned judgment, rendered in their favor, the sum of eleven hundred and three dollars, and forty-four and a half cents, and the interest on which sum, up to the date of the rendition of the judgment in said declaration mentioned, amounted to the further sum of two hundred and thirty-four dollars and fifty cents; whereupon, he, the said Michael, by motion without writ, as in his declaration is alleged in that behalf, and for said sum of money, so paid by him, with interest, before the same court of chancery, at Huntingdon aforesaid, in said State of Tennessee, obtained, against the said Charles and William K., the identical judgment which is in his said declaration mentioned, as he had a lawful right to do, according to the form of the statute of the said State of Tennessee, in such cases made and provided, and then and there still in full force, and according to the tenor and the legal obligation of the said injunction bond, and said proceedings so had thereon as aforesaid, as will appear by the record thereof, still remaining in the said court of chancery, at Huntingdon aforesaid, as is in the said declaration alleged.    Wherefore, and by which means, he, the said Michael, says, that the said Charles had legal notice of the pendency of said suit by motion, in which the said judgment, in the said declaration mentioned, was rendered against them, the said Charles, and the said William K. Waddy.    And this, the said Michael, is ready to veryify, &c."

To this replication, the defendant demurred. The special causes of the demurrer, present two grounds. *First,* That the replication is argumentative. *Second,* That the matter set up is not a sufficient reply to the defence set up in the plea. The Circuit Court sustained the demurrer, and rendered final judgment thereon for the defendant.

The first ground of demurrer is of minor importance, going only to the form of the replication; and concede it to have been well taken, which we incline to believe the case, it might have been disregarded as surplusage, if the substantial averments presented a sufficient reply to the plea, which we will proceed to consider.

It is admitted, by the replication, that Moore, at the time the motion was made, and the judgment in favor of Iglehart was rendered, was a resident citizen of Arkansas; and, therefore, under the decision of this court, in the case of *Barkman vs. Hopkins,* was not affected by a judgment rendered upon constructive notice; (whatever may be the effect of a judgment so rendered as between resident citizens of the State, in which the judgment is rendered); but the replication is based upon the ground, that, notwithstanding this, Moore is bound by the judgment, because, by the tenor and legal effect of the injunction bond, which was executed by him whilst a citizen of Tennessee, he submitted himself to the jurisdiction of the court in which the suit was pending; and, thereby, expressly waived the necessity of notice, and agreed to abide the summary proceeding by statute, which dispensed with the necessity of notice.

If we concede that such was the effect of the injunction bond, and that Moore, by executing the same, did really consent that upon the dissolution of the injunction, judgment should be rendered against him, without notice, not only in favor of the obligees in the bond, but, also, in favor of the security, in the event that he should pay the penalty of the bond, or the damages by reason of its breach, then, no doubt, the replication would be sufficient; because, a party may, without notice, make himself a

party to a suit by entering his voluntary appearance, or he may, by agreement, waive his right to notice, but the very fact of waiving, pre-supposes a knowledge that the suit has been brought, or an anti- cipation that it may be brought; and, therefore, when such agree- ment is made, it is either with a knowledge of the fact, or in an- ticipation of it, an admission that he will, at his peril, take notice of the proceeding, and abide by the judgment rendered.

But the question is, was the agreement made? The counsel for Iglehart contends that it was, by force of the bond, in connec- tion with the statutes of Tennessee.

The authorities which he cites, only tend to show the construc- tion given to the statute in Tennessee, and the validity of a judg- ment rendered under it in that State. As between the citizens of the State of Tennessee, we will not say but that such would be the effect of a judgment so rendered. But in actions *in personam* the rule laid down in *Mills vs. Durgee*, 7 *Cranch* 481, only ex- tends to judgments in which the court has acquired jurisdiction of the person of the defendant by actual notice, by his appearance to the action, or his waiver of the necessity of notice, or where the said defendant is a resident citizen of the State in which the judg- ment is rendered, at the time the suit is commenced, and has had constructive notice, and not to judgments rendered upon con- structive notice against non-resident defendants. Such was the construction placed upon the decision of the Supreme Court of the Unitad States, in *Mills vs. Durgee*, by this court, in *Bark- man vs. Hopkins*, 6 *Eng.;* and such, also, is the construction given to it by the Supreme Court of the United States in a late case, (*DeArcy vs. Ketchum*, 11 *How. Rep.* 175,) in which it was held that an action would not lie upon a judgment against a non-resi- dent defendant, who had not been served with actual notice of the suit. *Fowler vs. Parks*, 3 *Mason Rep.* 280, and *Pickett vs. Swan*, 5 *Mason Rep.* 42, substantially affirm the same qualifica- tion of the rule laid down in *Mills vs. Durgee*. See, also, *Wil- liams vs. Preston*, 3 *J. J. Marsh.* 601.

The authorities relied upon by counsel, which hold a judgment

in Tennessee valid upon constructive notice, and under the rule in *Mills vs. Durgee*, equally so in every other State, do but affirm the general rule, when the judgment is rendered upon actual notice, without affecting the rule in *Barkman vs. Hopkins.*

As regards an express agreement to waive the necessity of notice, or an implied agreement, when considering the statute of Tennessee, and the injunction bond together whilst we admit that judgment might well be rendered upon the dissolution of the injunction, upon the bond without notice, we are not prepared to go further, and concede that, by the terms of the bond, or the law under which it was executed, there was any agreement between Iglehart, the security, and Moore, the principal in the bond; that in the event that Iglehart, after the judgment upon the bond, should pay the same, or any part of it, that Iglehart should take judgment against Moore for such sum, without notice of the suit or motion for that purpose.

The right of action, in favor of Iglehart, against Moore, arose after the rendition of the judgment, and upon the payment of the money, as security for Moore. And whether he elected to proceed by an ordinary action in assumpsit, or by motion under the statute of Tennessee, no judgment could properly be rendered without proof that the money was so paid. The defendant had as much right to contest this, in the one form of action, as the other; and unless the defendant had been, at the time the suit was commenced, a resident of the State of Tennessee, he could not be reached or affected by constructive notice, because, the Legislature of Tennessee could neither, by its process, send its officers beyond the limits of the State, nor (for a like reason) send forth its constructive notice, which could not be more effective. We have no reference, of course, to proceedings *in rem.* In them, the court acts upon the thing within its jurisdiction. But in proceedings *in personam*, nothing short of actual notice will make the judgment of the court obligatory upon the non-resident defendant. Judge STORY says, in *Fowler vs. Parks:* "No Legislature can compell any person, beyond his own territory, to be-

come a party to any suit instituted within its domestic tribunals. The principle seems universal, and is consistent with the general principles of justice, that the Legislature of a State can bind no more than the person, and the property within its territorial jurisdiction." And in his *Conflict of Laws, p.* 547, the same judge says : " In respect to suits *in personam,* by a mere personal citation, *viis et modis,* such as by putting up a citation, or by edital citation, there is no pretence to say, that such mode of proceeding can confer any legitimate jurisdiction over foreigners, who are non-residents, and do not appear to answer the suit."

Moore, at the time this proceeding by motion was commenced, was domiciliated in Arkansas, and nothing less than actual notice, or a waiver of notice, would give such validity to the judgment as to make it obligatory upon him.

The statute laws of Tennessee did not enter into, and constitute a part of the contract, by which Moore and Iglehart became bound to Fellows, in the sense in which it is contended for by the counsel of Iglehart. The statute, which they insist, comes in aid of the contract, relates to the remedy, and not to the right. The legal effect of the bond was not in issue. It had performed its office, and been merged into the judgment. The suit was not upon the bond, but upon a cause of action arising after the judgment upon the bond had been rendered. At the time this right of action accrued, Moore was a non-resident of the State of Tennessee.

If Iglehart, as the security for Moore, paid the judgment rendered against him, or any part of it, he is, no doubt, entitled to recover the money so paid, by an action in *indebitatus assumpsit,* but before he proceeds to take judgment against Moore, he must give him notice of the suit, so that he may contest the facts upon which a recovery is sought to be had against him.

We think, therefore, that the demurrer to the replication was properly sustained. Let the judgment be affirmed.

Absent, Mr. Justice Scott.